No. 3871

**Second Circuit**

**NORTH LOUISIANA SANITARIUM, INC., v. SERIO ET AL.**

(November 7, 1930. Opinion and Decree.)

Richard H. Switzer, of Shreveport, attorney for plaintiff, appellant.

Booth & Grafton, of Shreveport, attorneys for defendant Publishing Company, appellee.

George T. McSween, of Shreveport, attorney for defendant Samuel Serio.

ODOM, J.  While the son of Samuel Serio was witnessing a game of baseball played by some boys at the Princess Park in Shreveport he had his skull fractured by a ball bat which one of the players let slip from his hands.  The child was immediately carried by Josh Jones to the North Louisiana Sanitarium, where an operation was performed.  The total expense incurred at the sanitarium was $183.  This suit is against Samuel Serio, the father of the child, and the Journal Publishing Company in solido to recover the amount.  The father of the child did not carry it to the sanitarium and did not originally authorize those in charge to care for and treat it; but was made defendant upon the theory that a father is liable under the law for such charges, whether authorized by him or not.

As a cause of action against the Journal Publishing Company, a corporation which publishes and distributes the Shreveport Journal, an afternoon paper, plaintiff alleged that the Serio child was carried to the sanitarium by Josh Jones and John H. Green, who were employees and agents of the said corporation, and who authorized the care and treatment at the expense of the company.

Serio defended on the ground that he did not authorize the treatment, and alleged that the Journal Publishing Company was responsible; and the publishing company denied liability on the ground that Jones and Green had no authority to bind it, even if it be true that they did give instructions that the bill be charged to it.

There was judgment in the lower court in favor of plaintiff and against the defendant Serio, but rejecting its demands against the publishing company.  Serio did not appeal, and therefore the judgment is final as to him.  This appeal is by plaintiff from the judgment rejecting its demands against the publishing company.

The judgment is correct.  The testimony shows that, immediately after the child was injured, Josh Jones, who was present, took it to the sanitarium and authorized those in charge to administer whatever treatment was necessary and, while it is alleged and contended that he told those in charge of the sanitarium that he was an employee and agent of the Journal Publishing Company, and that the bill would be paid by that company, there is serious conflict in the testimony on this point.  Dr. Abramson, president and general manager of the sanitarium, testified that Jones

told him that the publishing company was responsible for the bill and would pay it, while Jones, on the other hand, testified that he made no such statement to Dr. Abramson, but stated to him that the bill would be taken care of, and, if necessary, he would take up a collection among the newsboys and in that way raise the money. The case was tried about two years after the occurrence, and, while Dr. Abramson testified that he was authorized by Jones to charge the bill to the publishing company, yet he was asked on cross-examination if it were not possible that Jones did tell him that he would see that the bill was paid, and, if necessary, would raise the money through the newsboys, he replied, "Yes, it is possible he could have said that." He was then asked if Jones did not say to him in conversation that he was in charge of the newsboys, and he answered, "yes." It is alleged that Mr. Green went with Jones to the sanitarium, but that was not proved. Mr. Green did go to the sanitarium later, and he says he told Dr. Abramson and others that the bill would be taken care of, but that he did not say that the Journal Publishing Company would pay it. It was not shown, therefore, by a preponderance of the evidence that these parties authorized Dr. Abramson to charge the bill to the publishing company.

But, even if it had been shown that Jones and Green did state that the bill would be paid by the publishing company, the testimony fails to show that these parties were in any sense the agents of the company or that they had any authority whatever to bind it.

The testimony clearly shows that Jones was not at the time an employee of the publishing company. He purchases newspapers from the publishing company and pays for them in cash, and in turn delivers them to newsboys to be sold on the streets. He was neither an employee or agent of the publishing company. Mr. Green is circulation manager for the publishing company, and has charge of the newsboys known as route boys, who deliver papers to the regular subscribers. He is an employee of the company, but not an officer, and has no authority to bind the company. It is not shown that he authorized the sanitarium to administer the treatment. Counsel for plaintiff advances the theory that the baseball game was being played by newsboys employed by the defendant company, and that the game was sponsored by it, and that therefore one of defendant's employees inflicted the injuries, and that therefore the defendant company should be held liable. But the testimony shows that the boy who let the bat slip from his hand and injure the Serio child was not one of the newsboys, but an outsider, and, furthermore, that the ball game was not sponsored by the defendant company but by Jones, who employed the boys to sell newspapers on the streets.

The officers and directors of the publishing company had no knowledge of this transaction until several months afterwards. The testimony shows that the sanitarium mailed bills to the publishing company and that the charge was not repudiated. But Mr. Franz, manager of the company, testified that he had no personal knowledge of these bills, and there is no testimony to show that any other officer of the company knew anything about them.

It is perfectly clear that plaintiff failed to show that the publishing company is in any sense liable for the amount.

The judgment appealed from is correct, and is therefore affirmed, with costs.